OPINION
{¶ 1} Appellant Heather Heldt [hereinafter appellant] appeals from the April 29, 2004, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of appellant's three children to the Stark County Department of Jobs and Family Services [hereinafter SCDJFS].
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Heather Heldt is the biological mother of Craig Heldt (d.o.b. 8/31/95), and twins Ann Marie and Michelle Woodson (d.o.b. 7/18/97). On March 6, 2002, SCDJFS filed a complaint alleging neglect and abuse and seeking temporary custody of the children. In the complaint, SCDJFS alleged that the agency had a history of non-court involvement with the family. The complaint alleged the following facts.
 {¶ 3} In December, 2001, a referral of sexual abuse was investigated. The grandfather was the suspected perpetrator. The allegations were substantiated. The children were to have no contact with the grandfather. The children stated they had no visitation with the grandfather since that time but had spoken with him on the phone.
 {¶ 4} In February, 2002, an investigation concerning physical discipline occurred. At that time, pinch marks were observed on Craig's face. During an interview, Craig stated that "Bill made the mark". Bill Fowler resided with Ms. Heldt. Mr. Fowler stated that it was an accident and that Craig had bumped into his elbow. A safety plan was signed on February 8, 2002, by appellant. The safety plan stated that physical discipline would not be used on the children.
 {¶ 5} On or about March 7, 2002, a referral of physical abuse was made to SCDJFS. At that time, a worker went to Craig's school and observed bruises on his cheeks, scabs on his face and forehead. During an interview with Craig, he stated that Bill pinched his cheeks causing the bruises. Craig sated that Bill had punched him on the head and the back of the legs. Craig also stated that Bill had hit him with a flat board for punishment. Craig stated that this occurred regularly.
 {¶ 6} In separate interviews with the siblings (the twins), both stated that Bill pinched them on the face, punched them on the head and hit them with a flat board for punishment. Both girls had observable bruising on their cheeks. The children reported that they had told appellant about this and that she and Bill got into a fight over his hitting the children. All the children report being afraid of Bill. At the time the complaint was filed, appellant and Fowler had not availed themselves for an interview by SCDJFS.
 {¶ 7} An adjudicatory hearing was held on May 29, 2002. The trial court found that the children were abused and granted temporary custody of the children to SCDJFS. On August 8, 2003, SCDJFS filed a motion for permanent custody. This motion was withdrawn by SCDJFS and the children remained in the legal custody of SCDJFS. On January 29, 2004, SCDJFS filed a second motion for permanent custody.
 {¶ 8} A hearing was held on SCDJFS's motion on March 30, 2004. During the first phase of the hearing, it was established that the children had been in the custody of SCDJFS for more than 12 of the last 22 months. In addition, there was testimony that there were no fathers involved in any way with the children. Based upon this evidence, the trial court made a finding that the children had been in the custody of SCDJFS for 12 of the past 22 months and the fathers have abandoned the children. The trial court then moved to the best interest phase of the hearing.
 {¶ 9} During the best interest phase of the hearing, the following evidence was adduced. Craig Heldt was eight years old and the twins, Ann Marie and Michelle Woodson, were six years old. None of the children have physical disabilities but all three have emotional difficulties. A social worker with SCDJFS, Amy Craig, testified that Craig Heldt had anxiety issues and some learning disabilities. He was not developmentally on track as indicated by the fact that he had been held back in school one year. In addition, Craig had an active individual education plan (IEP) and was in special education classes. Further, Craig was enrolled in counseling. Craig had been in counseling since before SCDJFS's involvement in the family, as a result of molestation by Craig's grandfather.[1]
 {¶ 10} Ms. Craig stated that the twins, Ann Marie and Michelle Woodson, likely had the same emotional difficulties as their brother, Craig. The twins began first grade, but due to "acting kind of weird," they were moved back to kindergarten. Although the record is not clear what this "weird" behavior was, later in the hearing, the children's Guardian Ad Litem mentioned that the girls at one point acted like cats. Both of the girls were in counseling at the time of the hearing.
 {¶ 11} The children were in two different foster homes. Craig Heldt was in one foster home and the twins were in another foster home. There was testimony from Ms. Craig that the children were interacting well in their respective foster homes. Ms. Craig testified that the children were well bonded with their respective foster parents and appeared to be feeling safe.
 {¶ 12} Ms. Craig also testified that the children were bonded to each other. The children visited with each other every other week at the same time that they had visitation with their mother. Occasionally they visited with each other at other times, as well. The foster parents all felt that it would be good for the children to continue to have contact with each other and intended to continue the contact.
 {¶ 13} Ms. Craig felt that there was a bond between the appellant and the children although she stated that it was not very strong. Appellant had two hours of visitation with the children every other week. Ms. Craig testified that she observed some of the visitation. She testified that during many visits appellant apparently struggled with engaging the children in activities and in redirecting some of their behavior. Ms. Craig stated that at times the children wandered off and sometimes she had to direct them back into the room. Ms. Craig claimed that sometimes the visits were good, however, more times they were of concern. Tr. at 16-17. By comparison, Ms. Craig found that the interaction was better between the children and their foster families.
 {¶ 14} Initially, appellant missed multiple visitations but recently had been visiting regularly. Appellant called Ms. Craig to make arrangements for each visitation. Appellant had not missed a visitation since July, 2003.
 {¶ 15} Craig Heldt had some anxiety issues on two occasions related to visitation with appellant. On one occasion before a visit with appellant and on another occasion after a visit with appellant, Craig pulled his hair out, leaving bald spots. Craig's counselor thought that this behavior was from anxiety.
 {¶ 16} The case plan called for appellant to acquire stable housing. Testimony showed that appellant had acquired appropriate housing which was described as stable and clean. It had enough bedrooms for the children although appellant had not furnished the bedrooms.
 {¶ 17} The case plan also called for appellant to obtain counseling. At the time of the hearing, appellant was in individual counseling. She had at some point been terminated from counseling for missing appointments and had recently re-enrolled. According to Ms. Craig, appellant's counsellor stated that appellant had come a long way but did not go into great detail about appellant's progress. Ms. Craig claimed that appellant had missed two or three sessions in the last month or month and a half but could not say whether they were excused or unexcused.
 {¶ 18} The case plan also required appellant to stop abusing alcohol. Testimony from Ms. Craig confirmed that appellant regularly attended "AA" and had quit drinking. In fact, Ms. Craig had stopped requiring appellant to submit to random testing because all of the previous tests had been negative.
 {¶ 19} At the time of the hearing, appellant was employed at a Denny's Restaurant as a waitress. Appellant worked five days a week with consistent hours from 2:00 P.M. to 11:00 P.M. Appellant had been employed prior to this job and had either been fired or laid off. Appellant testified that if the children were returned to her, she would use SCDJFS' night care for night working mothers to care for the children while she was at work.
 {¶ 20} Appellant was ordered as part of the case plan to obtain a psychological evaluation. Appellant did obtain the evaluation but took 16 months to complete it.
 {¶ 21} The children's guardian ad litem [hereinafter GAL] testified that the children had settled down some since being placed with the foster parents. However, the GAL acknowledged that she had never seen the children interact with appellant. The only contact the GAL had with appellant was to see her at court hearings and to meet with her once, a week before the hearing. This meeting occurred after appellant contacted the GAL. In addition, the GAL had never been to the home of appellant. The GAL had visited and observed the children in their foster homes.
 {¶ 22} Both Ms. Craig, who was the case worker from SCDJFS, and the GAL felt that it was in the children's best interests for permanent custody to be given to SCDJFS.
 {¶ 23} Ms. Craig testified that SCDJFS had a concern with appellant's relationship with Bill Fowler. SCDJFS was further concerned that appellant had stayed with Mr. Fowler a significant period of time after the concerns of physical abuse were raised. Appellant testified that she had moved out from his residence ten months before the hearing and had no contact with him since then.
 {¶ 24} Following the hearing, the trial court entered a Judgment Entry on April 29, 2004. The trial court awarded permanent custody of all three children to SCDJFS. In so doing, the trial court found that the children had been in the custody of SCDJFS for 12 months of the last 22 consecutive months. The trial court found that the three children were adoptable and that they had little bond with appellant. In addition, the trial court found appellant's parenting skills to be lacking. The trial court also found that the children were bonded to each other. The trial court concluded that it was in the best interest of the three children for permanent custody to be granted to SCDJFS for the purpose of adoption.
 {¶ 25} Thus, it is from the April 29, 2004, grant of permanent custody to SCDJFS that appellant appeals, raising the following assignments of error:
 {¶ 26} "I. The judgment of the trial court that the minor Children cannot or should not be placed with appellant is against the manifest weight of the evidence.
 {¶ 27} "II. The trial court abused its discretion by granting Permanent Custody to Scdjfs based on the best interests of the children."
 I {¶ 28} In the first assignment of error, appellant contends that the trial court's finding that the minor children cannot or should not be placed with appellant is against the manifest weight of the evidence. However, we find no grounds for reversal.
 {¶ 29} Revised Code 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. That statute provides as follows:
 {¶ 30} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 31} "a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 32} "b) The child is abandoned.
 {¶ 33} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 34} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 35} In this case, the trial court found that the children had been in the custody of SCDJFS for 12 of the last 22 consecutive months and that the children could not and should not be placed with either parent at that time or within a reasonable period of time. These findings are alternate grounds upon which to base the grant of permanent custody, R.C. 2151.414(B)(1)(a) and (d) respectively. Either of these findings, if supported by the evidence, is sufficient in and of itself to base a grant of permanent custody pursuant to R.C. 2151.414(B)(1).
 {¶ 36} Appellant does not appeal the trial court's finding that the children were in the temporary custody of SCDJFS for 12 or more of the past consecutive 22 months. Such a finding is enough to satisfy the requirements of R.C. 2151.414(B)(1). SeeIn re Whipple Children, Stark App. No. 2002CA00406, 2003-Ohio-1101.[2]
 {¶ 37} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 38} In the second assignment of error, appellant asserts that the trial court abused its discretion when it found that a grant of permanent custody to SCDJFS was in the children's best interests. We disagree.
 {¶ 39} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 40} In determining the best interest of the children, R.C.2151.414(D) provides as follows: "In determining the best interest of a child . . ., the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 41} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 42} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 43} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 44} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 45} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 46} Divisions (E)(7) to (11) of R.C. 2151.414 state as follows:
 {¶ 47} "(7) The parent has been convicted of or pleaded guilty to [certain enumerated offenses]. . . .
 {¶ 48} "(8) The parent has repeatedly withheld medical treatment or food from the child. . . .
 {¶ 49} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 {¶ 50} "(10) The parent has abandoned the child.
 {¶ 51} "(11) The parent has had parental rights involuntarily terminated . . . with respect to a sibling of the child.
 {¶ 52} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody . . . and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody . . .
 {¶ 53} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 54} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 55} "(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 56} "(16) Any other factor the court considers relevant."
 {¶ 57} In this case, the testimony demonstrates that the trial court's findings were not against the manifest weight of the evidence. The testimony showed that the children were special needs children. The children require continued counseling. Each has been held back for a year in school. Their behavior had improved since their removal from appellant's home.
 {¶ 58} There was also testimony that the children had a "not very strong bond" with appellant. On the other hand, it was testified to that the children were very well bonded with the foster parents. Ms. Craig, who observed the children with both appellant and with the foster parents, testified that the interaction was better between the children and their foster parents than between appellant and the children. The children appeared to feel safe in the foster homes. The GAL stated that the twins were "very, very happy" with their foster parents and that Craig Heldt was "doing fine in his foster home." Tr. at 47.
 {¶ 59} The twins' foster parents very much wanted to adopt the twins. Craig Heldt's foster parents were strongly considering adopting him. Both the GAL and Ms. Craig testified that they felt it was in the children's best interests for permanent custody to be granted to SCDJFS.
 {¶ 60} Based upon the testimony presented, we find that there was competent, credible evidence upon which the trial court could find that it was in the children's best interests for permanent custody to be granted to SCDJFS. Accordingly, appellant's second assignment of error is overruled.
 {¶ 61} The Judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J. Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark is affirmed. Costs assessed to appellant.
[1] It appears from the record that appellant filed a police report against the grandfather for the molestation of the children.
[2] We note that the trial court's finding is supported by the evidence.